E-FILED
Tuesday, 20 December, 2005  02:50:45 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMES UTLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3017 |
| | ) | |
| ALONZO MONK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant State Officials' Rule 12 (c) Motion for Judgment on the Pleadings (d/e 16).  Plaintiff James Utley claims in Count I of the Complaint (d/e 1) that he was fired from his state employment as the Chief Record Officer (Position) for the Illinois Department of Corrections (IDOC) for political reasons in violation of his First Amendment rights.  He alleges in Count II that he was denied his property interest in the Position without due process of law.  The Defendants are Illinois Governor Rod Blagojevich, his Chief of Staff, Alonzo Monk, and other officials in the Blagojevich administration.  The Defendants ask for judgment on the pleadings, claiming that: (1) the

Position was one for which political affiliation was an appropriate employment consideration, and (2) Utley had no property interest in the Position because he was a probationary employee at the time of his termination.  The Court finds that the Position was one for which political affiliation was an appropriate employment consideration.  The Court, therefore, grants judgment on the pleadings on Count I.  Issues of fact, however, exist regarding whether Utley had a property interest in the Position.  The Motion for Judgment on the Pleadings on Count II is denied.

For purposes of the Motion, the Court may consider all pleadings, including the Complaint, Answer, and attached exhibits.  Fed. R. Civ. P. 12(c); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998).  The Answer (d/e 15) includes as exhibits: (1) a letter dated September 15, 2003, from Defendant Roger Walker Jr., Director of the IDOC, to Utley informing him that his employment would be terminated as of September 19, 2003 (Exhibit A); (2) a Central Management Services (CMS) Position Description for Chief Record Officer, effective January 1, 2001 (Exhibit B) (2001 Position Description); and (3) a CMS Position Description for Chief Record Officer, effective June 1, 2003 (Exhibit C) (2003 Position Description) (The 2001

Position Description and the 2003 Position Description are collectively referred to as Position Descriptions).  The Position Descriptions may also be considered in evaluating the Defendants' Motion because they are matters of public record and are central to Utley's claim that nothing in the Position made political considerations a requisite for the Position.  Riley v. Blagojevich, 425 F.3d 357, 362 (7th Cir. 2005); 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002).

Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions.  188 LLC, 300 F.3d at 735. The Court must accept as true all of Utley's well-pleaded factual allegations and draw all inferences in the light most favorable to him.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  The Court, however, is not obligated to give any weight to unsupported conclusions of law. R.J.R. Services, Inc. v. Aetna Cas. and Sur. Co., 895 F.2d 279, 281 (7th Cir. 1989).  Judgment on the pleadings should not be entered unless it appears beyond doubt that Utley can prove no set of facts that would entitle him to relief.  Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

<u>STATEMENT OF FACTS</u>

Utley worked for the IDOC in the Position.  The Position Descriptions for the Position were produced by CMS.  Under Illinois law, CMS position descriptions are produced by CMS and reviewed by the Illinois Civil Service Commission.  20 ILCS 415/8a(1) & 415/10(4); 80 Ill. Adm. Code §301.20; Riley, 425 F.3d at 361-62.  The 2001 Position Description stated that the Chief Record Officer reported to the IDOC Deputy Chief of Administrative Services.  The 2001 Position Description stated that the Chief Record Officer performed the following duties:

> Subject to administrative approval of the Deputy Chief of Adm. Services, serves as Chief Record Officer for the Department of Corrections; manages, through subordinate regional managers, all institutional Record Office operations; develops and implements policies and procedures regarding inmate record maintenance.

> 1.    Formulates policies and directs uniform implementation of statutory changes or legal opinions affecting sentence and or good time credits; develops and implements procedures in which uniform record keeping is maintained.

> 2.    Supervises staff; assigns work; approves time off; provides guidance and training; gives oral reprimands and refers employee for more severe discipline; completes and signs performance evaluations; establishes annual goals and objectives; counsels staff on problems with productivity, quality of work and conduct; determines staffing needs to achieve program objectives.

> 3.    Coordinates Adult and Juvenile Division Record Offices in

the establishment and maintenance of uniform record keeping procedures for all Adult and Juvenile facilities.

4.    Coordinates record keeping activities for institutional field services and Bureau of Identification offices and develops and implements procedures for this operation.

5.    Serves as a liaison for the Department's Record Offices to various State's Attorney Offices, Attorney General's Office, Department of Corrections legal staff and the Prisoner Review Board.

6.    Schedules and conducts regular meetings of adult and juvenile institutions Record Offices; visits, inspects and reviews the Department's Record Offices in their continuing professional development.

7.    Coordinates with Legislative Liaison in the development of legislative proposals; meets and confers with administrative staff for purpose of integrative departmental concerns.

8.    Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above.

<u>Answer</u>, Exhibit B.

The 2003 Position Description moved the Position to the Bureau of Legal Services.  The holder of the Position now reported to the Chief Legal Counsel.  <u>Answer</u>, Exhibit C.  The duties of the Position, however, were substantially unchanged.  The 2003 Position Description of duties states:

Subject to administrative approval of the Chief Legal Counsel

5

(Sr. Public Service Admin.), serves as Chief Record Officer for the Department of Corrections; manages, through subordinate regional managers, all institutional Record Office operations; develops implements policies and procedures regarding inmate record maintenance.

1.  Supervise staff; assigns and reviews work; approves time off; provides guidance and training; effectively recommends grievance resolutions; completes and signs performance evaluations; establish annual goals and objectives; counsels staff on problems with productivity and quality of work; determines staffing needs to achieve program goals and objectives; reviews activity reports.

2.  Formulates policy and directs uniform implementation of statutory changes or legal opinions affecting sentence and or good time credits; develops and implements procedures in which uniform record keeping is maintained.

3.  Coordinates Adult and Juvenile Division Record Offices in the establishment and maintenance of uniform record keeping procedures for all Adult and Juvenile facilities; coordinates record keeping activities for institutional field services and Bureau of Identification offices and develops and implements procedures for this operation.

4.  Serves as a liaison for the Department's Record Offices to various State's Attorney Offices, Attorney General's Office, Department of Corrections legal staff and the Prisoner Review Board.

5.  Schedules and conducts regular meetings of adult and juvenile institutions, Record Offices; visits, inspects and reviews the Department's Record Offices in their continuing professional development.

6.  Coordinates with Legislative Liaison in the development

of legislative proposals; meets and confers with administrative staff for the purpose of integrative departmental concern.

7.    Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above.

Answer, Exhibit C.

By letter dated January 27, 2003, Utley was advised that his employment was being terminated on February 10, 2003. Complaint, ¶ 11. He evidently was terminated and then reinstated. Id., ¶ 15. On September 15, 2003, Defendant Roger Walker, Jr., the IDOC Director, sent Utley a letter which stated:

> This letter serves as an official notice that you will not be certified from your probationary period to a Term Appointment as a Senior Public Service Administrator in Inmate Issues. Therefore, you will be terminated, non-certified, effective September 19, 2003 close of business.

Answer, Exhibit A. Utley claims he was fired both times, in February and September 2003, because of political considerations. He also claims that he had a property interest in his continued employment in the Position, and that the Defendants denied him that property without due process when they fired him both times. The Defendants ask for judgment on the pleadings.

7

<u>ANALYSIS</u>

<u>Count I:  First Amendment, Political Firing</u>

The First Amendment generally protects individuals from being fired due to their political affiliations.  <u>Elrod v. Burns</u>, 427 U.S. 347 (1976). Government officials, however, may make employment decisions based on political affiliation when such affiliation is an appropriate requirement for the effective performance of a particular position or public office.  <u>Branti v. Finkel</u>, 445 U.S. 507, 518 (1980); <u>Elrod</u>, 427 U.S. at 367.

Political affiliation may be an appropriate employment consideration when the position has policy-making or confidential duties.  Positions involve "policy-making" if the holders of the positions are authorized to have meaningful input, either directly or indirectly, into "government decisionmaking on issues where there is room for principled disagreement on goals or their implementation."  <u>Nekolny v. Painter</u>, 653 F.2d 1164, 1170 (7th Cir. 1981).  Employees in "confidential" positions, "are in close contact with policymakers and the highly confidential communications or records affecting decisions."  <u>Meeks v. Grimes</u>, 779 F.2d 417, 420 (7th Cir. 1985).  The question of whether a position is either "policy-making" or "confidential," for which political affiliation is an appropriate employment

8

consideration, is determined by the duties and responsibilities inherent in the position itself, rather than the specific duties the particular employee performed in that position.  <u>Riley</u>, 425 F.3d at 362; <u>Americanos v. Carter</u>, 74 F.3d 138, 141 (7th Cir. 1996); <u>Tomczak v. City of Chicago</u>, 765 F.2d 633, 640-41 (7th Cir. 1985).

The Court can determine as a matter of law that a position is one for which political affiliation is an appropriate employment consideration if the duties and responsibilities of the position are outlined by law.  <u>Pleva v. Norquist</u>, 195 F.3d 905, 911-12 (7th Cir. 1999).  The Court can also determine the issue if the undisputed job description sets forth duties inherent in the position.  <u>Riley</u>, 425 F.3d at 362; <u>Thompson v. Illinois Dept. of Professional Regulation</u>, 300 F.3d 750, 754-55 (7th Cir. 2002).  The official CMS job description in Illinois can be used to determine whether the duties of a position are such that political affiliation is a proper consideration, unless the circumstances surrounding the creation of the job description indicate that the description has somehow been manipulated for political purposes.  <u>Riley</u>, 425 F.3d at 361-62.  The 2001 Position Description was produced before Defendant Blagojevich became Governor. Thus, the Defendants could not have manipulated that description to

misstate the duties inherent in the Position.  The June 2003 Position Description, quoted above, leaves the duties of the Position largely unchanged.  The Court sees nothing in the pleadings that would call into question the accuracy of these job descriptions.  Utley does not plead any facts that call into question the accuracy of the two Position Descriptions. He only pleads a legal conclusion that "There was nothing in the job duties of Plaintiff's positions that made political considerations a requisite for the position."  Complaint, ¶13.  Such legal conclusions are not entitled to any weight.  R.J.R. Services, 895 F.2d at 281.  See Thompson, 300 F.3d at 754 (plaintiff did not plead facts that would contradict the job description).  The Court therefore finds that the Position Descriptions accurately set forth the duties inherent in the Position.

The Position Descriptions establish that the Position is a "policy-making" position for which political affiliation is an appropriate employment consideration.  The holder of the Position also formulates policies related to record keeping throughout the IDOC.  In particular, the holder of the Position formulates policies to implement statutory changes and legal opinions affecting criminal sentences and good-time credits.  The procedures and policies for calculating prison sentences and good-time

credits are extremely important; the length of time that prisoners actually serve in prison affects prisoners, victims, their families, and society at large. The Defendants would want policies implementing the relevant statutes and case law to further the Blagojevich administration's goals. The Defendants therefore would want the person formulating those policies to be loyal to the Blagojevich administration. A person with the discretionary authority to formulate and implement such important policies is in a policy-making position. See e.g., Thompson, 300 F.3d at 757-58; Tomczak, 765 F.2d at 642.

The holder of the Position also participates in the development of legislative proposals for IDOC. The current administration would clearly have an interest in the political loyalty of individuals who provide input in the formulation of such proposals. See e.g., Americanos, 74 F.3d at 142. The inherent duties of the Position, therefore, make the Position one for which political affiliation is a proper consideration. The Defendants did not violate Utley's First Amendment rights when they terminated him based on political considerations.

Count II:  Due Process

To state a due process claim in Count II, Utley must allege that he had

a property interest in the Position, and that the Defendants denied him that property interest without due process.   <u>Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1</u>, 143 F.3d 351, 358 (7th Cir. 1998).  A property interest in employment does not arise from the Constitution, but must arise from an independent source, such as state law or a contract.  The source of the right must give the employee a legitimate claim of entitlement to continued employment, not just a hopeful expectation.  <u>Crim v. Board of Educ. of Cairo School Dist. No. 1</u>,147 F.3d 535, 545 (7th Cir. 1998).

Issues of fact exist concerning whether Utley had a property interest in the Position.  Utley alleges that he had a property interest in the Position based on state law, specifically the Illinois Personnel Code and Personnel Rules.  <u>Complaint</u>, ¶ 19.  He further alleges that the Defendants fired him, and so, took his property without due process.  The Defendants deny this allegation.  The Defendants assert that Utley did not have a property interest in the Position because he was a probationary employee.  To support their claim, the Defendants cite the September 15, 2003, termination letter, quoted above.  Defendant Walker states in the letter that Utley was a probationary employee at the time of his termination.

Walker's letter, at best, creates an issue of fact concerning whether he was a probationary employee on September 19, 2003.  Unlike the official CMS job description, a letter written by one of the Defendants was not promulgated by CMS, and reviewed by the Civil Service Commission, pursuant to Illinois law.  As such, the letter does not carry the authority to establish, as a fact, that Utley was a probationary employee.  See Riley, 425 F.3d at 361-62 (discussing the process for the production of CMS position descriptions).  Utley therefore may proceed with his due process claim.

The Defendants also cite Title 80, § 302.610(a) of the Illinois Administrative Code, which they claim establishes that Utley was a probationary employee on September 19, 2003.  State Officials' Response to Plaintiff's Clarification of His Memorandum of Law (d/e 27) at 1-2; 80 Ill. Adm. Code § 302.610(a).  This section of the Administrative Code states that an employee who is reinstated after January 1, 1999, is placed on four months' probation if the employee is a former certified employee who resigned, or was terminated in good standing, or whose position was reallocated downward, or who was laterally transferred, or whose name was placed on a reemployment list.  The Defendants argue that Utley was terminated before this four month probationary period expired.

The pleadings do not allege that Utley resigned, or was terminated in good standing, or that his position was reallocated downward, or that he was laterally transferred, or that his name was place on a reemployment list. Thus, the Court cannot determine from the pleadings whether § 302.610(a) applies.  Furthermore, the pleadings do not allege the date on which Utley was reinstated after his first termination on February 10, 2003.[1]  Thus, even if § 302.610(a) applies, the Court cannot determine from the pleadings whether he was terminated within four months of his reinstatement. Finally, even if Utley was a probationary employee on September 19, 2003, he still may have a claim based on the February 2003, termination.  Given these factual questions, judgment on the pleadings is not appropriate on the Due Process claim.

THEREFORE, the State Officials' Rule 12(c) Motion for Judgment on the Pleadings (d/e 16) is ALLOWED, in part, and DENIED, in part.  The Court grants judgment on the pleadings in favor of the Defendants and against the Plaintiff on Count I of the Complaint, but denies the Motion for

---

[1]The parties rely on matters outside of the pleadings to attempt to establish the date that Utley was reinstated. Plaintiff's Clarification of His Memorandum of Law Opposing Defendants' 12(c) Motion for Judgment on the Pleadings (d/e 25), Exhibit A. The Court will not consider matters outside the pleadings in evaluating the Motion for Judgment on the Pleadings.  Fed. R. Civ. P. 12(c); Northern Indiana Gun & Outdoor Shows, Inc., 163 F.3d at 452.

Judgment on Count II of the Complaint.

IT IS THEREFORE SO ORDERED.

ENTER:   December 20, 2005.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE